FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 14 AM 2: 26

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DENNIS PATRICK BROWN | CIVIL ACTION NO: 05-4560 |
| VERSUS | SECTION K; DIVISION 3 |
| CITY OF COVINGTON, et al. | JUDGE STANWOOD R. DUVAL, JR. |
| | MAGISTRATE DANIEL E. KNOWLES, III |

**PLAINTIFF'S OPPOSITION TO DEFENDANT JERRY MILLER'S
<u>RULE 12 MOTION TO DISMISS AND REQUEST FOR ORAL ARGUMENT</u>**

NOW INTO COURT, through undersigned counsel, comes plaintiff, Dennis Patrick Brown, and respectfully submits this memorandum in opposition to Defendant Jerry Miller's Rule 12 Motion to Dismiss. Plaintiff requests oral argument on this motion given the complexity of the issues involved.

Mr. Brown was wrongfully convicted and spent twenty years in prison for a rape he did not commit. He brings this action under 42 U.S.C. § 1983 against three police officers involved in his investigation, the City of Covington, and the lab technician who conducted the

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep____
___ Doc. No.____

serology testing used as evidence against him. The lab technician, Jerry Miller, has moved to dismiss.

Defendant Miller's suppression of material exculpatory test results violated Mr. Brown's due process rights to a fair trial. Since those rights were clearly established when the violation occurred, Defendant is not entitled to qualified immunity. *Burge v. St. Tammany Parish*, 187 F.3d 452, 479–80, & n.11 (5th Cir. 1999). Defendant contends that Mr. Brown's allegations are speculative and conclusory, but the complaint provides a wealth of specifics. The complaint identifies the police officer and specific communication that tipped off Defendant to implicate Mr. Brown, describes the serology tests that Defendant used to implicate Mr. Brown, identifies the particular serology tests commonly used at the time that may have exonerated him but that Defendant Miller failed to disclose, alleges that the results of the serology tests were misrepresented to obtain an arrest warrant for Mr. Brown, and provides numerous other details about the Defendant's methods. These details more than suffice to overcome a Rule 12(b)(6) motion. The Court also should reject Defendant's argument that the *Parratt* doctrine bars Plaintiff's Section 1983 claims, as Defendant concedes that his argument directly contradicts binding Fifth Circuit precedent. *See Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003), *cert. denied*, 543 U.S. 808 (2004) (holding that there are fundamental rights secured by due process that are beyond the reach of *Parratt*). Finally, Plaintiff has sufficiently pled his state law claims against Defendant Miller.

## SUMMARY OF THE ALLEGATIONS

On September 19, 1984, a white female called the Covington Police Department to report that she had been raped by an African American male. Compl. ¶ 14. The victim told

the police that she had been in her home sleeping on the couch and was awakened by a man pulling on her arm, who put a knife to her neck and raped her. *Id.*

From the outset, the victim's ability to identify the perpetrator was highly suspect. On the night of the attack, she told Defendant Ann Barker, a Covington police officer, that it was "very dark" in the room, and that her attacker wore a mask and baseball cap during the entire incident, except that mask slipped once or twice showing only "part" of her attacker's nose. *Id.* at ¶ 15.

The Covington Police transported the victim to the hospital for a rape examination. *Id.* at ¶ 16. Defendant Barker submitted the victim's minipad and underwear, along with specimens from the rape examination for analysis to the Louisiana State Police Crime Laboratory. *Id.* at ¶ 16.

The Covington Police Department scheduled a line-up for the victim to view the suspects to be held on November 5, 1984. *Id.* at ¶ 18. Defendant Barker asked Mr. Brown to volunteer as a "fill-in" for the line-up. *Id.* at ¶ 19. At the time, Mr. Brown was 17 years old, the only person living with his blind father, and had no police record. *Id.* at ¶¶ 1, 19. He was not aware that the purpose of the line-up was to identify a rapist, and he was not represented by counsel when he "agreed" to volunteer. *Id.* at ¶ 19.

Even though Mr. Brown was not a suspect but a volunteer fill-in, the victim identified him as her attacker. *Id.* at ¶ 22. A legitimate suspect freely walking the streets would pose a substantial threat to the public safety and be likely to flee, especially after being positively identified by the victim. Mr. Brown, however, was not arrested after the line-up, presumably because the police recognized the infinitesimal chance that a volunteer fill-in committed the crime. *Id.* at ¶ 23.

Defendant Barker submitted a request to the Louisiana State Crime Laboratory for a scientific analysis of Mr. Brown's blood, saliva, head hair, and pubic hair. *Id.* at ¶ 23. Defendant Barker noted on the request that Mr. Brown had been "identified via line-up." *Id.* at ¶ 24. Mr. Brown's complaint alleges that this notation violated proper procedures and was intended as a signal to the crime laboratory to implicate Mr. Brown and/or avoid revealing exculpatory evidence. *Id.*

Defendant Miller examined the forensic evidence collected from the victim and Mr. Brown. *Id.* at ¶ 25. He determined that both the victim and Mr. Brown had type-O blood and were secretors. *Id.* A secretor is an individual who secretes the antigens characteristic of his or her blood group in saliva, semen, and other bodily fluids. *Id.* Defendant Miller also detected the presence of bloodstains, seminal fluid, and spermatozoa on the victim's minipad. *Id.* The only antigen he detected in this mixture of stains was the H antigen, which is indicative of type O blood. *Id.* Defendant Miller therefore determined that the seminal fluid on the minipad could have come from a non-secretor of any blood type (in which case the H antigen found on the minipad was contributed solely by the victim, who was menstruating on the day of the attack), or a type O secretor. *Id.* Defendant Miller testified at trial that Mr. Brown's blood type put him among the 46.5 percent of the male population that could have produced the semen collected from the victim. *Id.*

Defendant Miller intentionally and in bad faith failed to run commonly-used serology tests that could have excluded Mr. Brown as the rapist, or ran those tests and concealed the results. *Id.* at ¶ 26, 27. Defendant Miller only testified that he ran the ABO blood type and secretor tests on the seminal stains, even though Louisiana crime laboratories commonly used additional tests at the time to distinguish among individuals with the same blood types. For

4

example, the Rh (Rhesus disease) factor is a serum protein that was discovered in 1940. A positive Rh factor indicates that blood contains a protein that also is found in Rhesus monkeys. Most people, including Mr. Brown, have a positive Rh factor. If the stains on the victim's minipad lacked this protein and thus showed a negative Rh factor, it would have excluded Mr. Brown as a suspect. *Id.* at 26.

Additional tests commonly used at the time could detect several polymorphic red blood cell enzymes. Mr. Brown would have been excluded if his blood contained enzymes not found in the stains on the victim's minipad. In another contemporaneous case[1] in which both the victim and defendant had type O blood, Defendant Miller testified that he conducted these enzyme tests to enhance the relatively low discriminatory power of ABO typing. Jones v. Butler, 864 F.2d 348, 357 (5th Cir. 1988).

On November 9, 1984, Defendant Barker received "verbal confirmation" regarding the results of Defendant Miller's serology test. Compl., at ¶ 28. The same day, she signed an affidavit to obtain an arrest warrant for Mr. Brown. Defendant Barker swore in her affidavit that Mr. Brown was "positively identified . . . through serology comparison done at the Baton Rouge Crime lab." Defendant Barker's statement that Mr. Brown was "positively identified" through a serology comparison was false. *Id.* At most, the serology comparison failed to exclude Mr. Brown from the 46.5 percent of the male population that could have produced the semen collected from the victim.

---

[1] The crime in the *Jones* case occurred just months before the rape was alleged to have occurred in Mr. Brown's case.

The complaint recounts how the Covington police then arrested Mr. Brown and repeatedly violated his constitutional and state law rights, including holding a knife to his throat in order to extract a false confession. *Id.* at 29–46.

At trial, the only evidence presented against Mr. Brown was the victim's seriously flawed identification, Defendant Miller's testimony that his serology tests placed Mr. Brown within the 46.5 percent of the male population that could have contributed the semen found on the victim's minipad, and the police officers' testimony regarding their fabricated/coerced confession. *Id.* at 45. Twenty years later, Mr. Brown was released from prison after he was exonerated by DNA evidence.

Plaintiff has stated claims against Defendant Miller for violating his constitutional rights to a fair trial and due process of law (Count III), conspiracy (Count IV), and claims under state law for malicious prosecution (Count VII), intentional infliction of emotional distress (Count VIII), and spoliation of evidence (Count X).

## **LEGAL STANDARD**

A complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Admire v. Strain*, Civ. A. 04-0579, 2005 WL 3533690, *2 (E.D. La. Nov. 10, 2005) (Duval, J.). The plaintiff's complaint "is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Id.* (internal citations omitted). This is consistent with the "well established policy that the plaintiff be given every opportunity to state a claim." *Id.* (internal citations omitted).

**ARGUMENT**

I.    **Defendant Miller Violated Mr. Brown's Due Process Rights to a Fair Trial.**

Plaintiff's allegation that Defendant Miller ran serology tests that excluded him as the rapist, and concealed the exculpatory results from prosecutors, states a claim for violation of his constitutional rights under the principles set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). A Section 1983 claim for damages is maintainable against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, *or causes to be subjected*, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). Since a *Brady* violation is a violation of the constitutional right to due process that occurs when a prosecutor fails to provide exculpatory evidence to the defense, a lab technician who suppresses exculpatory evidence from the prosecutor "causes [the defendant] to be subjected" to the deprivation of a constitutional right. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1292–93 (10th Cir. 2004) (denying motion to dismiss Section 1983 claim against lab technician who allegedly withheld exculpatory evidence and fabricated inculpatory evidence in a rape case).

The Fifth Circuit repeatedly has held that a police officer who "deliberately conceals exculpatory evidence . . . violates clearly established constitutional principles" and therefore is subject to liability under Section 1983. *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988); *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992) (defendant's "deliberate failure to disclose this undeniably credible and patently exculpatory evidence to the prosecuting attorney's office plainly exposes him to liability under § 1983"); *Burge v. St. Tammany Parish*, 187 F.3d 452, 479–80 (5th Cir. 1999) (denying police officer's motion for summary judgment on

*Brady* allegations that he was liable under Section 1983 for failing to disclose exculpatory evidence).[2]

Courts that have addressed claims against both police officers and laboratory technicians have used identical analysis for both. *Jones v. City of Chicago*, 856 F.2d 985, 991 (7th Cir. 1988) (affirming jury verdict against police officers and lab technician under Section 1983 who allegedly concealed exculpatory evidence, including the results of tests showing that the defendant had different semen and blood types from the types found in the victim); *Pierce*, 359 F.3d at 1293 (denying motion to dismiss allegations that forensic chemist maliciously withheld exculpatory evidence and fabricated inculpatory evidence based on same constitutional standards applied to police officers).

Defendant Miller's argument that he was not "constitutionally required to conduct any serology or DNA testing for an accused person" misconstrues Plaintiff's claims. Def.'s Br., at 8–9. Plaintiff does not claim that Defendant Miller conducted a negligent investigation, but rather that he deliberately and in bad faith suppressed exculpatory evidence, which directly led prosecutors to indict, prosecute, and convict him for the rape. *See Sanders*, 950 F.2d at 1162 (recognizing that a police officer who deliberately ignored exculpatory evidence or conducted a reckless investigation is exposed to liability under Section 1983).

---

[2] The Fifth Circuit did not limit these holdings when it pronounced that it could find "no case extending *Brady* to police officers or lab technicians." *Mowbray v. Cameron County*, 274 F.3d 269, 278 (5th Cir. 2001). The court merely held that police officers are not required to provide evidence directly to *defense counsel*; the court clarified in a footnote that police officers are not insulated from liability for—as Mr. Brown has alleged occurred in this case—"deliberately conceal[ing] exculpatory evidence from all parties, including the prosecution." *Id.* at 278 n.5 (citing *Geter* for the proposition that deliberately concealing evidence from the prosecution and defense defeats qualified immunity under Section 1983). *See also Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001) (rejecting defendant's argument that *Brady* does not extend to police officers where plaintiff alleged that officers withheld exculpatory information from prosecutors).

**II.     Defendant Miller is Not Shielded by Qualified Immunity.**

Violation of a constitutional right that was "clearly established" at the time of the violation precludes successful invocation of the qualified immunity defense. *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (describing two-step analysis under which court asks whether a constitutional violation has been alleged, and if so, whether plaintiff's rights were "clearly established" at the time of the violation). "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotations omitted); *see also Burge*, 187 F.3d at 479 (describing two-step framework).

The Court should reject Defendant Miller's claim of qualified immunity because concealing exculpatory evidence violates constitutional principles that have been clearly established in the Fifth Circuit since well before Defendant Miller's violations. *Burge*, 187 F.3d at 480 n.11 (holding that concealing exculpatory evidence by police officers has been a clearly established constitutional violation since 1967). *See also Geter*, 849 F.2d at 1559 ("We agree with Geter that a police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles."); *Newsome*, 256 F.3d at 753 (rejecting qualified immunity defense of officer accused of withholding information from prosecutors in 1979 and 1980).[3]

---

[3] Defendant Miller argues that the complaint does not established a "causal link" between his misconduct and the violation of Mr. Brown's constitutional rights. It is not clear how this argument relates to qualified immunity. In any event, Mr. Brown's complaint establishes the requisite causal link: Mr. Brown would not have been indicted, prosecuted, or convicted if Defendant had revealed exculpatory test results. *See Jones*, 856 F.2d at 994 (police officers cannot escape causal link by pointing to the decisions of prosecutors or grand jurors whom they have defrauded).

Contrary to Defendant's assertions, Plaintiff's allegations against Defendant Miller are neither conclusory nor speculative. The allegations are sufficiently fact-specific to overcome a qualified immunity defense at this stage of the proceedings:

- The complaint alleges that the police did not arrest Mr. Brown after he was selected by the victim from the line-up in which he served as a volunteer "fill-in" (Compl., at ¶ 23). Instead, they engaged in a concerted effort to frame him with additional evidence (Compl., at ¶¶ 24–46);

- The complaint identifies the police officer and specific communication that tipped off Defendant Miller to implicate Mr. Brown, which directly links Defendant to the chain of misconduct (Compl., at ¶ 24);

- The complaint explains the serology tests that Defendant Miller used to implicate Mr. Brown (Compl., at ¶ 25);

- The complaint describes other serology tests commonly used at the time that were conspicuously absent from Defendant Miller's reports and testimony, even though he used the same tests in another contemporaneous case in which both the victim and defendant had type O blood (Compl., at ¶ 26–27);

- The complaint alleges that the results of Defendant Miller's serology tests were misrepresented to support the arrest warrant for Mr. Brown (and ultimately used at trial against him) (Compl., at ¶ 28, 45); and

- The complaint alleges that Mr. Brown ultimately was exonerated of the crime (Compl., at ¶ 49–51).

These allegations must be taken as true on a motion to dismiss. *Admire*, 2005 WL 3533690, at *2. They strongly support the premise that Defendant Miller suppressed commonly used tests in Mr. Brown's case, either by running the tests and concealing the results or by intentionally and in bad faith failing to run the tests. Compl., at ¶ 27. If Defendant Miller disputes the allegation that he concealed exculpatory test results, that factual dispute should be resolved through discovery, not on a motion to dismiss. *See Geter*, 849 F.2d at 1560 (when plaintiff's pleadings assert facts which, if proven, would defeat a qualified immunity defense, court permits discovery to resolve a factual dispute).

### III. The *Parratt* Doctrine Does Not Bar Plaintiff's Section 1983 Claim for Violations of the Constitutional Right to a Fair Trial.

Defendant Miller's argument that the *Parratt* doctrine bars Plaintiff's Section 1983 claims should be rejected because it both directly contradicts the law of this Circuit and misconstrues Supreme Court precedent. *See* Def.'s Br., at 14–21.

Defendant contends that *Parratt* bars *all* Section 1983 claims for violation of procedural due process whenever the violation is caused by a state actor's random and unauthorized act, including claims that implicate "fundamental fairness in the determination of guilt at trial." *Id.* at 20. Defendant concedes, as he must, that the Fifth Circuit rejected this view *en banc* in *Castellano v. Fragozo*, 352 F.3d 939, 942, 957–58 (5th Cir. 2003) (holding that there are fundamental rights secured by due process that are beyond the reach of *Parratt*). He instead contends that the *Castellano* decision was wrong. Def.'s Br., at 20. Since *Castellano* is binding authority, this court is required to follow it.

The purpose of the *Parratt* doctrine is to restrict the scope of Section 1983's application when a plaintiff seeks to vindicate "some of the interests granted historical protection by the common law of torts." *Albright v. Oliver*, 510 U.S. 266, 283–84 (1994) (Kennedy, J., concurring). *See also Parratt v. Taylor*, 451 U.S. 527, 544 (1981). In his concurring opinion in *Albright*, Justice Kennedy wrote that a common law claim for malicious prosecution, relating only to the initiation of criminal charges that were dropped before trial, falls within the realm of interests encompassed by *Parratt*. *Albright*, 510 U.S. at 282–91 (Kennedy, J., concurring). Justice Kennedy carefully distinguished that claim, however, from cases where a state actor

11

"'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental.'" *Id.* at 282, (quoting *Medina v. California*, 505 U.S. 437, 445 (1992)).[4]

In *Castellano*, the Fifth Circuit affirmed that constitutional rights designed to ensure "'fundamental fairness in the determination of guilt at trial'" are "core commands of our United States Constitution" and "are beyond the reach of *Parratt*." *Castellano*, 352 F.3d at 957–58 (quoting *Albright v. Oliver*, 510 U.S. 266, 283 (1994) (Kennedy, J., concurring)). A cause of action under Section 1983 arises when these constitutional rights are violated. *See id.* 352 F.3d at 958 ("a state's manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the *Due Process Clause*, a deprivation of a right not reached by the *Parratt* doctrine.").

*Parratt* therefore is no bar to the Plaintiff's Section 1983 cause of action against Defendant Miller, because Plaintiff has alleged that the Defendant's intentional suppression of exculpatory test results violated Mr. Brown's fundamental "constitutional rights to due process and a fair trial." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 462 (5th Cir. 1999); *see also Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988); *Luna v. Beto*, 391 F.2d 329, 332 (5th Cir. 1967); *Newsome v. McCabe*, 256 F.3d 747, 751-52 (7th Cir. 2001) (allegation that police officers withheld material exculpatory evidence in violation of plaintiff's due process rights to a fair trial not barred by the *Parratt* doctrine).

---

[4] The Court in *Albright* narrowly held that the filing of charges without probable cause (described as a claim for malicious prosecution) did not violate the petitioner's substantive due process rights sufficient to maintain an action under Section 1983. *Id.* at 275. The Court expressed no view on whether petitioner's claim would succeed under the Fourth Amendment, and noted that petitioner had not asserted a claim for violation of procedural due process. *Id.* at 271, 275. The holding in *Albright* does not apply to Plaintiff's case against Defendant Miller because Mr. Brown has not asserted a constitutional claim for malicious prosecution.

IV. **Mr. Brown Has Alleged Valid State Law Claims Against Defendant Miller.**

   A. **Plaintiff Has Stated A Valid Claim for Malicious Prosecution**

Defendant argues that he is not liable for malicious prosecution because he did not "legally cause" the criminal proceedings against Mr. Brown, and probable cause existed to proceed against Mr. Brown. Neither contention has merit.

Defendant cites no authority for his assertion that only "an initial malicious accusor" or a prosecutor or quasi prosecutor can be liable for malicious prosecution. Def.'s Br., at 23. To the contrary, under the Restatement of Torts "[a] private person who takes an active part in *continuing or procuring the continuation* of criminal proceedings *instituted by himself or by another* is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." *Restatement (Second) Torts* § 655 (emphasis added). By suppressing exculpatory test results, Defendant Miller took an active part in Mr. Brown's continued confinement and prosecution. He cannot escape liability for malicious prosecution simply because he did not initially file charges against Mr. Brown. *See Pierce*, 359 F.3d at 1291–92 (rejecting lab technician's argument that she could not be liable for malicious prosecution because she was neither involved in the plaintiff's arrest nor responsible for filing charges).

Plaintiff's complaint also meets the requirement that "the criminal proceeding was initiated *or continued* without 'probable cause.'" *Miller v. East Baton Rouge Parish Sheriff's Dep't*, 511 So.2d 446, 452 (La. 1987) (emphasis added). Defendant argues that the existence of probable cause depends solely on the facts at the time the proceedings were initiated. Even if this is an accurate statement of the law (which Plaintiff disputes),[5] Defendant conducted his

---

[5] *See Pierce*, 359 F.3d at 1295 (agreeing with district court that "even when probable cause is present at the time of the arrest, evidence could later surface which would eliminate that probable cause") (internal citation omitted).

13

serology tests *before* Mr. Brown was arrested. The arrest warrant relied at least in part on the results of those tests. Compl., at ¶ 28. Had the serology tests excluded Mr. Brown, the police would have lacked probable cause to arrest and initiate proceedings against him, because the tests would have conclusively refuted the victim's selection of him as a volunteer "fill-in" in a line-up.[6] *See Miller*, 511 So.2d at 453 ("Verification may be required to establish probable cause where the source of the information seems unworthy, or where further information about a serious charge would be readily available.").

    **B.**    **Plaintiff Has Stated A Valid Claim Against Defendant Miller for Intentional Infliction of Emotional Distress.**

Defendant contends that Plaintiff has not alleged conduct that is sufficiently "extreme and outrageous" to maintain a cause of action for intentional infliction of emotional distress. Def.'s Br., at 25. The complaint alleges that Defendant intentionally caused Mr. Brown to be prosecuted, convicted, and serve twenty years in prison for a crime he did not commit. Plaintiff respectfully submits that this conduct is sufficiently outrageous and extreme to satisfy the Louisiana pleading standards for this claim.

    **C.**    **Plaintiff Has Stated A Claim Against Defendant Miller for Spoliation of Evidence.**

In Louisiana, a state tort claim for spoliation of evidence must allege that the defendant intentionally destroyed evidence for the purpose of depriving another of its use. *Pham v. Contico Int'l Inc.*, 759 So. 2d 880, 882 (La. App. 2000). Defendant argues that he cannot be liable for spoliation of evidence because Plaintiff has not "allege[d] any specific information that leads anyone to reasonably believe that Defendant concealed any test results." Def.'s Br., at 24.

---

[6] Plaintiff disputes whether a victim's selection of a volunteer fill-in ever could establish probable cause, although the Court need not decide that question to resolve Defendant's motion.

14

The same set of facts discussed in Section II, supra, with respect to Defendant's assertion of qualified immunity, applies here. These allegations strongly support the premise that Defendant Miller intentionally suppressed exculpatory serology tests, Compl., at ¶ 27, and they must be taken as true on a motion to dismiss. *Admire*, 2005 WL 3533690, at *2.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Miller's Rule 12 Motion to Dismiss.

Dated: March 14, 2006

Respectfully submitted,

William E. Rittenberg (Bar No. 11287)
Rittenberg & Samuel LLC
715 Girod Street
New Orleans, Louisiana, 70130
Office Phone: (504) 524-5555
Fax: (504) 524-0912
Email: Rittenberg@RittenbergSamuel.com

Eric H. Holder, Jr.
Andrew P. Rittenberg
Timothy R. Clinton
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: (202) 662-6000
Fax: (202) 778-5272
Email: arittenberg@cov.com

*ATTORNEYS FOR PLAINTIFF DENNIS PATRICK BROWN*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Plaintiff's Opposition to Defendant Jerry Miller's Rule 12 Motion to Dismiss And Request for Oral Argument was served on this date via first-class mail, postage prepaid, to the following:

>Deborah Cunningham Foshee
>Jon A. Van Steenis
>HEMELT & FOSHEE, LLC
>717 W. 17th Ave.
>Covington, LA 70433
>(985) 892-9604
>
>*Attorneys for Defendants City of Covington, Ann Barker, Paul Cazaubon, Elgin Montgomery*
>
>Lance Sterling Guest
>LOUISIANA DEPARTMENT OF JUSTICE
>Litigation Division
>601 Poydras St.
>Suite 1725
>New Orleans, LA 70130
>(504) 599-1200
>
>*Attorney for Defendant Jerry Miller*

March 14, 2006

William E. Rittenberg